# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Winthrop Resources Corporation,                          Civil No. 17-1448 (DWF/SER)

        Plaintiff,

v.                                                                              **MEMORANDUM**
                                                                                **OPINION AND ORDER**

Apollo Education Group, Inc.,

        Defendant.

---

Shawn M. Raiter, Esq., Larson King, LLP, counsel for Plaintiff.

Aron J. Frakes, Esq., Fredrikson & Byron, PA; and Douglas E. Whitney, Esq., Douglas Whitney Law Offices LLC, counsel for Defendant.

---

## INTRODUCTION

The defendant-lessee in this case sought to terminate its leaseback agreement with the plaintiff-lessor for certain equipment. In the process of returning the equipment, the defendant discovered that some equipment had been lost. The defendant wrote to the plaintiff explaining the situation, including identifying which equipment was lost. The defendant also sent a check for the fair market value of the equipment as measured by an independent third party. The plaintiff refused to discuss how the defendant's performance was deficient. Instead, the plaintiff contended that the defendant had renewed the entire lease (including for the returned equipment) pursuant to a renewal

provision that provided that the lease would be renewed if the equipment was not returned.

When the defendant refused to make payments under the renewed lease, the plaintiff filed suit. The case is before the Court on the plaintiff's motion to dismiss the defendant's counterclaims for breach of the implied covenant of good faith and fair dealing and for unjust enrichment. (Doc. No. 9.) The plaintiff also has moved to strike certain allegations about prior cases accusing the plaintiff of bad faith and deceptive practices. For the reasons discussed below, the Court grants the plaintiff's motion to dismiss the unjust-enrichment claim but denies the remainder of the plaintiff's motion.

## BACKGROUND

In late 2010, Plaintiff Winthrop Resources Corporation ("Winthrop") contracted with Defendant Apollo Education Group, Inc. ("Apollo"). As part of the contract, Winthrop bought over 1,000 servers selected by Apollo and then leased the equipment back to Apollo. As relevant here, the lease agreement was in place for an initial term of 60 months and then would continue indefinitely for four-month terms until terminated. (*See* Doc. No. 8, Ex. H ("Lease Agreement") ¶ 1.)

Apollo elected not to renew the lease and undertook the proper notice procedures to end the lease. Pursuant to the lease, Apollo had to return the equipment to Park City, Illinois. Under the lease agreement, the notice of termination would be voided if Apollo did not return the equipment and the lease would be automatically renewed. (*Id.* ¶ 7.) When, however, equipment is lost, Apollo must provide Winthrop with written notice and pay for the lost equipment. (*See id.* ¶ 12.) The amount that Apollo had to pay would

depend on a formula based on the original costs of the lost equipment, the amount of time left on the lease, and the amount still owed under the lease.[1]

In the process of returning the equipment, Apollo discovered that some of the equipment had been lost—roughly 3%. Apollo returned the rest of the equipment and wrote to Winthrop explaining that some equipment was lost. The letter identified the equipment and included a check for $58,000, which was the fair market value as calculated by an independent third party. To put the $58,000 in context, Apollo had paid more than $180,000 per month to lease the equipment. Winthrop refused the check, refused to negotiate further, and contended that the entire lease agreement had been renewed (including for the returned equipment) because the lost equipment was not returned.

When Apollo failed to make payments under the renewed lease, Winthrop filed suit. Winthrop brought a single claim for breach of contract, alleging that Apollo failed to make lease payments on the renewed lease, failed to return all equipment, and failed to obtain maintenance agreements on the equipment. Apollo has counterclaimed: (1) seeking a declaration that the lease has been terminated; (2) for breach of contract; (3) breach of the implied covenant of good faith and fair dealing; and (4) unjust enrichment. Winthrop has moved to dismiss Apollo's claims for implied covenant of good faith and fair dealing and for unjust enrichment. Winthrop also moved to strike

---

[1]     Based on the allegations in the complaint, it appears that Apollo would owe 22.4% of the original costs of the lost equipment.

certain allegations regarding old cases about its sales practices (including allegations made by Winthrop's current counsel in other cases).[2]

## DISCUSSION

### I. Motion to Dismiss

#### A. Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court deciding a motion to dismiss may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative

---

[2] The Court cites to: the Complaint (Doc. No. 1-1) as "Compl."; the Counterclaim (Doc. No. 7) as "Counterclaim"; Plaintiff's Memorandum in Support of its Motion to Dismiss and to Strike (Doc. No. 12) as "Pl.'s Memo."; Defendant's Memorandum in Opposition (Doc. No. 17) as "Def.'s Opp."; and Plaintiff's Reply Brief (Doc. No. 19) as "Pl.'s Reply."

level." *Id*. at 555.  As the Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]."  *Twombly*, 550 U.S. at 556.

### B.     Implied Covenant of Good Faith and Fair Dealing

Winthrop moves to dismiss Apollo's claim for a breach of the implied covenant of good faith and fair dealing.  Apollo alleges that Winthrop has violated the implied covenant of good faith and fair dealing by acting in bad faith to hinder or frustrate Apollo's efforts to terminate the lease agreement.  In particular, Apollo hones in on Winthrop's refusal to explain why it would not accept the check for the lost equipment.

"Under Minnesota law, every contract includes an implied covenant of good faith and fair dealing requiring that one party not 'unjustifiably hinder' the other party's performance of the contract."  *In re Hennepin Cnty. 1986 Recycling Bond Litig.,* 540 N.W.2d 494, 502 (Minn. 1995) (citations omitted).  The implied covenant of good faith and fair dealing serves only "to enforce existing contractual duties, and not to create new ones."  *Allen v. Thom,* No. A07–2088, 2008 WL 2732218, at *5 (Minn. Ct. App. July 15, 2008).  "Examples of breach of the duty of good faith and fair dealing by unjustified hindrance include . . . avoid[ing] performance by affirmatively blocking the happening of a condition precedent."  *Cox v. Mortg. Elec. Registration Sys., Inc.*, 685 F.3d 663, 671 (8th Cir. 2012) (alternation in the original) (internal quotation marks omitted).

Here, Apollo has adequately pleaded a claim for breach of the implied covenant of good faith and fair dealing. Based on the allegations in the Counterclaim, Winthrop, in bad faith, hindered Apollo's efforts to terminate the contract. In particular, Winthrop allegedly refused to explain why Apollo's payment for the lost equipment was insufficient. As alleged, Winthrop's refusal to respond arose from a bad faith intention to hinder Apollo's efforts to terminate the lease agreement. *See Columbia Cas. Co. v. 3M Co.*, 814 N.W.2d 33, 40 (Minn. Ct. App. 2012) (concluding that the defendant had stated a claim for breach of the implied covenant of good faith and fair dealing by stating that the insurers had rejected performance "for unstated and unsupported reasons."). Thus, Apollo has adequately pleaded a breach of the implied covenant of good faith and fair dealing.

Winthrop's arguments to the contrary are unpersuasive. First, Winthrop argues that Apollo's claim fails because Apollo breached the lease agreement first. Second, Winthrop argues that Apollo's claim fails because Winthrop was merely demanding that Apollo strictly comply with the lease agreement by returning all the equipment. Last, Winthrop argues that Apollo's claim fails because the claim would create new contractual obligations rather than supplement existing ones.

First, Winthrop argues that Apollo's claim should be dismissed because Apollo first breached the lease agreement by failing to keep continuous maintenance agreements on the equipment. Winthrop cites to the black-letter law that a party is excused from performing the contract once the other party breaches the contract. (*See* Memo. at 12.) "[T]he first breach serves as a defense against the second breach." *Winthrop Res. Corp.*

*v. Eaton Hydraulics, Inc.*, Civ. No. 01-649, 2002 WL 35453165, at *6 (D. Minn. Apr. 23, 2002), *aff'd*, 361 F.3d 465 (8th Cir. 2004). Winthrop, however, is not seeking to be excused from the contract. Instead, Winthrop is seeking to continue to enforce the contract. Thus, whether Apollo kept maintenance agreements on the equipment has little to do with whether Winthrop hindered Apollo's efforts to terminate the lease agreement.

Second, Winthrop argues that Apollo's claim fails because Winthrop merely sought strict compliance with the lease agreement. Under the lease agreement, if Apollo lost any of the equipment, it was required to provide notice and payment for the lost equipment. (Lease Agreement ¶ 12.) According to the Counterclaim, once Apollo discovered the lost equipment, Apollo wrote to Winthrop and sent a check for the fair market value of the equipment. Winthrop never explained why that amount was insufficient and instead demanded that Apollo continue to make lease payment including for the returned equipment. As alleged in the Counterclaim, Apollo was trying to comply with the lease agreement but was hindered by Winthrop's bad-faith refusal to explain why Apollo had paid too little. *See Columbia Cas. Co*, 814 N.W.2d at 40. Apollo's claim therefore has little to do with what Winthrop demanded and everything to do with what Winthrop refused to do.

Last, Winthrop contends that Apollo's claim seeks to create new contractual obligations. Specifically, Winthrop contends that Apollo's claim is based on Winthrop's refusal to accept the tendered amount. But again, Winthrop's argument misstates the claim. Apollo is contending that Winthrop breached the implied covenant of good faith and fair dealing by refusing to explain how much was due for the lost equipment pursuant

7

to paragraph 12 of the lease agreement.  Such allegations state a claim for breach of the implied covenant of good faith and fair dealing.  *See id.*  Thus, the Court therefore denies Winthrop's motion to dismiss that claim.

### C.      Unjust Enrichment

Winthrop also moves to dismiss Apollo's counterclaim for unjust enrichment.  "In order to establish a claim for unjust enrichment, the claimant must show that another party knowingly received something of value to which he was not entitled, and that the circumstances are such that it would be unjust for that person to retain the benefit."  *Schumacher v. Schumacher*, 627 N.W.2d 725, 729 (Minn. Ct. App. 2001).  "Minnesota does not allow recovery under an unjust enrichment theory when there is an express contract which governs the parties' relations."  *Marvin Lumber & Cedar Co. v. Marvin Architectural Ltd.*, 217 F. Supp. 3d 1009, 1016 (D. Minn. 2016) (quoting *Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1392 (8th Cir. 1997)).

Here, Apollo alleges that it made excess contractual payments, which Winthrop wrongfully withheld.  Additionally, Apollo alleges that Winthrop wrongfully withheld security deposits.  Because a contract exists that fully sets forth Apollo's payment obligation, Apollo's unjust enrichment claim for those payments fails.  *See Sterling Capital Advisors, Inc. v. Herzog*, 575 N.W.2d 121, 126 (Minn. Ct. App. 1998).  Apollo can therefore recover the excess payments, if at all, through its breach of contract claim.

The Court therefore grants Winthrop's motion to dismiss for the unjust enrichment claim.[3]

## II.     Motion to Strike

### A.     Legal Standard

Rule 12(f) provides that the Court may, on its own or on motion made by a party, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. R. 12(f).  A district court enjoys "liberal discretion" under this rule.  *Stanbury Law Firm, P.A. v. Internal Revenue Serv.*, 221 F.3d 1059, 1063 (8th Cir. 2000).  However, striking a party's pleadings "is an extreme measure," and motions to strike under Rule 12(f) "are viewed with disfavor and infrequently granted." *Id.*

### B.     Counterclaim Allegations

In its counterclaim, Apollo recounts other lawsuits where Winthrop allegedly engaged in bad faith.  Specifically, Apollo quoted testimony from a 2007 lawsuit brought by a former Winthrop employee about Winthrop's allegedly aggressive sales tactics (Apollo would call them deceptive).  Additionally, Apollo references cases in this District where Winthrop's current counsel levels against Winthrop many of the same allegations here in defense of other businesses being sued by Winthrop.  In particular, Winthrop's counsel accused Winthrop of "engaging in deceptive and bad faith conduct."

---

[3]     Apollo also alleges that Winthrop was unjustly enriched because it has re-rented the returned equipment.  Whether Winthrop re-rented the returned equipment will likely be a factor for damages, but does not support a separate cause of action.

(Counterclaim ¶ 21.)  Winthrop has moved to strike these allegations.  Winthrop contends that the allegations are immaterial, impertinent, or slanderous.

The allegations in the counterclaim are not immaterial or impertinent. "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded, or a statement of unnecessary particulars in connection with and descriptive of that which is material."  *See* Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 30C *Fed. Prac. & Proc*. § 1382 (3d. ed) (footnotes omitted).[4]  Matters are impertinent when they consist of "statements that do not pertain, and are not necessary, to the issues in question."  *Id.*  There is "considerable overlap" between immaterial and impertinent materials.  *Id.*  In its Counterclaim, Apollo recounts different instances where Winthrop has been accused of bad faith and deceptive conduct.  While superfluous historical allegations will sometimes be stricken, the allegations can remain when they provide useful background and are not prejudicial.  *Id.*; *see also McLafferty v. Safeco Ins. Co. of Ind.*, Civ. No. 14-564, 2014 WL 2009086, at *3 (D. Minn. May 16, 2014).  Here, the Court concludes that prior allegations that Winthrop engaged in deceptive practices and bad faith are material and pertinent to whether Winthrop engaged in bad faith with Apollo.  Moreover, Winthrop has failed to show how

---

[4]     At oral argument, Winthrop focused on whether these statements would be admissible at trial.  But the standard is whether the allegations "clearly can have no possible bearing on the subject matter of the litigation . . . .  If there is any doubt whether the matter may raise an issue, the motion should be denied."  *McLafferty*, 2014 WL 2009086, at *3 (alternation in the original).  Here, past allegations of Winthrop's bad faith have some bearing on whether Winthrop acted in bad faith here.  Thus, the Court finds the materials are not impertinent or immaterial.

it will be prejudiced by the background allegations.  Accordingly, the Court denies

Apollo's motion to strike for immaterial or impertinent allegations.[5]

Likewise the allegations are not scandalous.  "'[S]candalous' matter is that which

improperly casts a derogatory light on someone, most typically on a party to the action."

Wright & Miller, 30C *Fed. Prac. & Proc.* § 1382.  Here, the allegations accurately reflect

the past legal positions of Winthrop's counsel and are not derogatory.  Given Apollo's

allegations that Winthrop engaged in a pattern of deceptive practices, the fact that Apollo

included prior allegations from Winthrop's counsel is simply good preparation and

lawyering.  Accordingly, the Court concludes that the allegations are not scandalous and

therefore denies Winthrop's motion to strike for scandalous allegations.

## ORDER

Based upon the foregoing, **IT IS HEREBY ORDERED** that Plaintiff Winthrop

Resources Corporation's Motion to Dismiss and Motion to Strike (Doc. No. [9]) is

**GRANTED IN PART** and **DENIED IN PART** as follows:

1.      Apollo Education Group, Inc.'s counterclaim for unjust enrichment is

**DISMISSED WITHOUT PREJUDICE**.

---

[5]      Winthrop also cites to *RSM Prod Corp. v. Fridman*, 643 F. Supp. 2d 382, 403
(S.D.N.Y.) for the proposition that courts must strike allegations about other actions if
they were not decided on the merits.  *RSM* relies on the Second Circuit case, *Lipsky v.
Commonwealth United* Corporation, 551 F.2d 887 (2d Cir.1976).  But subsequent cases
in the Southern District of New York make clear that *Lipsky* made no such
pronouncement.  "Instead, [*Lipsky's*] holding was limited to complaints that ultimately
resulted in a consent decree or nolo contendere plea protected by FRE 410."  *In re OSG
Sec. Litig.*, 12 F. Supp. 3d 619, 621 (S.D.N.Y. 2014).

2.    The remainder of Plaintiff's Motion is **DENIED**.


Dated:  August 16, 2017                    s/Donovan W. Frank
                                           DONOVAN W. FRANK
                                           United States District Judge